# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

JER CUSTOM DESIGNS, INC.,
JASON EARL RIFE

      Plaintiffs,

v.                           Case No. 3:25-cv-00120-

                                 **DEMAND FOR TRIAL BY JURY**

LENSDIGITAL, LLC, ENGRAVING
MACHINES PLUS CORP, BOSS
LASER LLC, ROBIN FARO, JASON
MONTELLO,  LOBO
DESIGNS LLC, KOWALSKI
DESIGNS LLC, MYCUP.IO LLC and
STANLEY ALTSHULLER

      Defendants.

_____/

## COMPLAINT

    JER CUSTOM DESIGNS, INC., and JASON EARL RIFE file this Complaint against LENSDIGITAL, LLC, ENGRAVING MACHINES PLUS CORP, BOSS LASER, LLC, LOBO DESIGNS LLC, KOWALSKI DESIGNS LLC, ROBIN FARO, JASON MONTELLO, MYCUP.IO LLC, and STANLEY ALTSHULLER and allege:

## NATURE OF ACTION

    1.    This is an action for patent infringement under 35 U.S.C. § 271 of the America Invents Act, violation of the Lanham Act under 15 U.S.C. § 1125(a), the violation of the Florida Deceptive and Unfair Trade Practices Act (§§ 501.201 et seq., Fla Stat.), , and Trade Libel under the Florida Laws.

## PARTIES

2.      JER CUSTOM DESIGNS, INC. ("JER") is a Florida corporation with its principal place of business at 3636 Lenox Avenue, Jacksonville, Florida 32254.

3.      Jason Earl Rife ("RIFE") is a Florida resident and is the owner and President of JER.

4.      JER and RIFE are collectively referred to herein as the "Plaintiffs".

5.      On information and belief, LENSDIGITAL, LLC ("LD") is a New Jersey limited liability company with a place of business at 11B Jocama Blvd., Old Bridge, New Jersey 08857.

6.      On information and belief, ENGRAVING MACHINES PLUS CORP ("AEON") is a Florida corporation with its principal place of business at 7600 Technology Drive, West Melbourne, Florida 32904.

7.      On information and belief, BOSS LASER, LLC ("BOSS") is a Florida limited liability company with its principal place of business at 640 Boss Laser Way, Sanford, Florida 32771.

8.      On information and belief, ROBIN FARO ("FARO") is a Florida resident who operates as an agent of LD, or otherwise serves in a capacity to further the interests of LD.

9.      On information and belief, JASON MONTELLO ("MONTELLO") is a New York resident who operates as an agent of LD, or otherwise serves in a capacity to further the interests of LD.

10.    On information and belief, LOBO DESIGNS LLC ("LOBO") is a Florida limited liability company with its principal place of business at 8265 90th Avenue, Vero Beach, Florida 32967. LOBO operates as an agent of LD, or otherwise serves in a capacity to further the interests of LD.

11.    On information and belief, KOWALSKI DESIGNS LLC ("KOWALSKI") is a Florida limited liability company with its principal place of business at 3004 Nottel Drive, #4, Saint Cloud, Florida 34772. KOWALSKI operates as an agent of LD, or otherwise serves in a capacity to further the interests of LD.

12.    On information and belief, MyCup.io LLC ("MYCUP") is a New Jersey limited liability company whose principal location is Beacon Hill Road, Morganville, New Jersey 07751.

13.    On information and belief, STANLEY ALTSHULLER ("ALTSHULLER") is a New Jersey resident. On information and belief, ALSTSHULLER is an officer and owner of LD and actively aided and abetted and authorized the infringing acts, unfair competition, and trade libel set forth herein.

14.    LD, AEON, BOSS, FARO, MONTELLO, LOBO, KOWALSKI, MYCUP, and ALTSHULLER, are collectively referred to herein as the "DEFENDANTS."

15.    LD, AEON, BOSS, FARO, LOBO, and KOWALSKI are collectively referred to herein as the "ACCUSED INFRINGERS."

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1221, 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a) and (b) as this case involves  federal questions arising under the patent laws and unfair competition laws of the United States and claims under the laws of the State of Florida ("State"), which are joined with substantial and related claims of violating the Florida Deceptive and Unfair Trade Practices Act (§§ 501.201 et seq., Fla Stat.),  and trade libel.  This Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367.

17.    DEFENDANTS are each subject to the personal jurisdiction of this Court pursuant to Florida Statutes sections 48.193(1)(a) and (b) because DEFENDANTS operate, conduct, engage in, or carry on a business venture in this State, and because DEFENDANTS have committed the tortious acts of patent infringement, unfair competition, deceptive and unfair trade practices, and/or , trade libel in this State.

18.    As to Defendant LD, venue is proper in this District pursuant to 28 USC § 1400(b) with regard to Counts I and II, because LD has committed acts of infringement and has a regular and established place of business, and with regard to the remaining Counts, venue is proper pursuant to 28 U.S.C. § 1391(b), because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District. On information and belief, LD has also consented to the

jurisdiction of this Court by the filing of actions in this District concerning related parties and related claims.

19.    As to Defendant AEON, venue is proper in this District pursuant to 28 USC § 1400(b) with regard to Counts I and II, because FARO resides in this District and with regard to the remaining Counts, venue is proper pursuant to 28 U.S.C. § 1391(b), because AEON resides in this District and a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District.

20.    As to Defendant BOSS, venue is proper in this District pursuant to 28 USC § 1400(b) with regard to Counts I and II, because BOSS resides in this District and with regard to the remaining Counts, venue is proper pursuant to 28 U.S.C. § 1391(b), because BOSS resides in this District and a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District.

21.    As to Defendant FARO, venue is proper in this District pursuant to 28 USC § 1400(b) with regard to Counts I and II, because FARO resides in this District and with regard to the remaining Counts, venue is proper pursuant to 28 U.S.C. § 1391(b), because FARO resides in this District and a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District.

22.    As to Defendant MONTELLO, venue is proper in this District pursuant to 28 U.S.C. § 1391(b) with regard to Counts IV and VI, because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District.

23.    As to Defendant LOBO, venue is proper in this District pursuant to 28 USC § 1400(b) with regard to Counts I and II, because LOBO resides in this District and with regard to the remaining Counts, venue is proper pursuant to 28 U.S.C. § 1391(b), because LOBO resides in this District and a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District.

24.    As to Defendant KOWALSKI, venue is proper in this District pursuant to 28 USC § 1400(b) because KOWALSKI resides in this District and with regard to the remaining Counts, venue is proper under 28 U.S.C. § 1391(b), because KOWALSI resides in this District and a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District.

25.    As to Defendant MYCUP.IO, venue is proper in this District pursuant to 28 U.S.C. § 1391(b) with regard to Counts IV and VI, because, on information and belief, a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District.

26.    As to Defendant ALTSHULLER, venue is proper in this District pursuant to 28 U.S.C. § 1391(b) with regard to Counts III, IV, V and VI, because, on information and belief, because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTS COMMON TO ALL COUNTS

### RIFE'S INVENTORSHIP AND PATENTING OF THE ROTOBOSS™ LINE OF ROTARY LASER ENGRAVING DEVICES.

27.    RIFE has lived in Florida for the past 17 years. In 2017, he retired from the U.S. Navy as a First-Class Petty Officer after twenty years of service. In the Navy, he worked as a jet engine mechanic and later, as a flight engineer.

28.    In 2016, just prior to his retirement from the Navy, he formed a Florida business, JER, the co-plaintiff. RIFE is the President of JER. After retiring from the Navy, he has worked full-time at JER.

29.    JER is a customization shop conducting business to provide custom engraved items as well as vinyl graphics, Direct to Film Printing, UV printing, 3D printing and prototyping for local businesses and patrons. JER, through its website, https://rotaryattachments.com, also supplies a wide range of rotary attachments, rotaries, and laser products worldwide to individual customers and wholesale distributors.

30.    As the owner of a custom engraving business, RIFE has developed expertise over the years in connection with the engraving equipment used in that industry. Recognizing the problems encountered in that industry when engraving cylindrical items like drinking glasses, RIFE invented a new rotary laser engraving device and filed for patent protection on June 15, 2020.

31.    In this regard, RIFE is the sole named inventor on U.S. Patent No. D985,640 (the "D640 Patent"). The D640 Patent issued from the U.S. Patent and Trademark Office ("USPTO") on May 9, 2023, and is entitled "Rotary Laser

Engraving Device". Rife alone invented the subject matter of the D640 Patent as shown on the face of the Patent and is the owner of the D640 Patent. A copy of D640 Patent is attached as **<u>Exhibit A</u>**.

32.    On January 7, 2025, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 12,186,830 ("the '830 Patent") entitled "Rotary Laser Engraving Device".  Rife is the sole inventor of the '830 Patent. JER owns the '830 Patent and holds all rights to sue for past, present and future infringement thereof. A copy of the '830 Patent is attached as **<u>Exhibit B</u>**.

33.    On September 17, 2024, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 12,090,572 ("the '572 Patent"), entitled "Rotary Laser Engraving Device". The '572 Patent is a continuation of the '830 Patent. Rife is the sole inventor of the '572 Patent. JER owns the '572 Patent and holds all rights to sue for past, present and future infringement thereof. A copy of the '572 patent is attached as **<u>Exhibit C</u>**.

34.    The '830 Patent and the '572 Patent are collectively referred to herein as the "JER Patents".

35.    During the prosecution of the JER Patents, the patent examiner reviewed existing rotary devices used for holding objects during laser engraving, including previously sold LD rotary products and publicly known prototypes, and found the claimed JER rotary devices to be unique and novel.

36.    The patented rotary laser engraving devices that are the subject of the JER Patents are sold by JER under the common law trademarks RotoBoss™

RotoBoss Junior™, and the RotoBoss Talon Pro™ with Extended Base and Support.

37.    JER's patented rotary laser engraving devices were first sold to the public on or about September 2019 and quickly became popular amongst makers as well as retailers due, in large part, to their ability to rotate large metal cups, as well as their durability and  reliability.

38.    Defendant LD is a competitor to JER.  On information and belief, LD also distributes and sells rotary laser engraving devices  and competes for the same retailers and customers as JER. LD's rotary laser engraving devices are sold under the trademark PiBurn.  On information and belief, at the time JER introduced the Rotoboss in the marketplace, LD had only introduced its Piburn V1 version.

39.     On information and belief, LD introduced its Piburn V3 in or around March 2021, which was after JER filed for patent protection and started selling its RotoBoss device.

### LENSDIGITAL'S DECEITFUL AND BAD FAITH ACTS

40.    Since as early as 2020, LD and several of its affiliates have engaged in a pattern of bad faith acts against JER and RIFE intended to damage both of them and the reputation of the RotoBoss™ brand in the marketplace, including by  (1) harassing and defaming JER and RIFE on social media and otherwise by publishing false and defamatory claims that RIFE is a thief and that the Plaintiffs copied LD's rotary laser engraving device and stole LD's intellectual property; (2) using RIFE's RotoBoss trademark to misdirect consumers to a website

(www.RotoBoss.com) highlighting a federal court complaint filed by LD personally against Rife and containing since retracted claims that RIFE "sought to illegitimately profit from LD's success by stealing LD's intellectual property and filing the '640 Patent"; and (3) encouraging its agents, customers and affiliates to likewise publish false and defamatory claims about JER and RIFE on social media by, on information and belief, advising these parties that LD invented RIFE's rotary laser engraving device and that JER stole the design from LD.

41.    As one example, LD has published statements to its customers and distributors on social media since as early as 2020 that Rife is a thief as shown in the below screenshot:



PiBurn Labs by LensDigital
Stan Altshuller · 7h · 🖼

Stealing is not cool. Calling out a thief takes courage.

Thank you to everyone who has written to us about the ill veiled attempt to copy the Grip by a competitor!  We are well aware and have anticipated the move. This is not the first time it happened, but this time we are ready. We sincerely appreciate your concern, and want to assure you that we are protected and will lean on the courts to fight back.

42.    On information and belief, the full posting from social media  shows that commenters on the post from ALTSHULLER understood that the so-called "thief" being accused by ALTSHULLER was RIFE.

43.    On information and belief, third parties, such as LD's Co-Defendants in this Complaint, in reliance on the false statements published by LD and

ALTSHULLER stating that RIFE is a thief, have participated in and further disseminated the publication of these false and defamatory statements concerning RIFE and JER and have further injured the reputation of RIFE, JER, and the RotoBoss rotary laser engraving device.

> ### 1. *LD's Use of an Astroturfing Marketing and Public Relations Scheme to Mislead and Confuse Customers.*

44.     On information and belief, Defendant LD utilizes an affiliate program to assist with astroturf marketing to existing and prospective customers.

45.     On information and belief, LD will generally offer affiliate arrangements to individuals and/or businesses who sell engraved cylindrical items, much like the products sold by LOBO, KOWALSKI, FARO, MONTELLO, and MYCUP.IO and ALTSHULLER.

46.     On information and belief, LD affiliates utilize their designation as an affiliate of LD to establish themselves as a leader in the maker community. Once established as a leader, the LD affiliate will typically start up one or more social media groups on one or more social media platforms. On information and belief, the affiliate uses their social media groups to market classes, or otherwise provide information to inexperienced individuals, market their respective business and/or products, and promote the LD PiBurn products. In exchange for promoting LD, on information and belief, LD assists in promoting the affiliate, and in some cases, offers the affiliate a percentage of any sales of LD products that are made by the affiliate.

47.    On information and belief, the LD affiliates do not always disclose to the public that they are affiliates of LD and will collaboratively push agendas established by LD.  This is done so others in the maker community are misled into believing certain information simply because there appear to be many individuals or businesses saying the same thing. On information and belief, many in the maker community are unaware that the apparent grassroots support of a matter of interest to LD is being disseminated by a team of biased affiliates that profit from their affiliation with LD. On information and belief, the scheme creates a false impression of grassroots, unbiased support.

48.    On information and belief, LOBO, KOWALSKI, FARO, MONTELLO, MYCUP.IO, and ALTSHULLER each control one or more social media groups that target prospective and existing customers within the maker community.

49.    On information and belief, LD and its affiliates falsely refer to themselves as the maker community online or in these social media groups, and state that such groups are all inclusive. On information and belief, DEFENDANTS will curate LD's promoted messages within each group by removing anyone from these social media groups who promotes brands or makes comments that are not aligned with LD.

50.    On information and belief, the social media groups controlled by LD's affiliates have a substantial following with more than 100,000 members.

51.    On information and belief, LD and its affiliates control more than one social media profile to further their scheme of creating the appearance of support

for LD's products and agendas. On information and belief, these agendas include harming the businesses of LD's competitors and disparaging the products of LD's competitors.

52.    On information and belief, many unaware individuals and businesses within the maker community have fallen victim to LD's affiliate scheme and have been exposed to and led to believe the misleading and often false representations made by LD and its affiliates.

### 2. *LD's Use of the RotoBoss Trademark to Misdirect Customers to a Discredited Complaint Accusing Rife of Copying and Stealing LD's Rotary Laser Engraving Device*

53.    Leonid Karchevsky, on information and belief, the CEO of LD, previously claimed that he is an inventor of RIFE's D640 Patent in a lawsuit filed individually against RIFE on September 20, 2023, in the U.S. District Court for the District of New Jersey (the "New Jersey District Court") (Case Number 3:23-cv-20530) (the "DNJ Complaint") .

54.    The DNJ Complaint  sought correction of ownership of the D640 Patent to name Karchevsky as an inventor and LD as an owner of the Patent by assignment from Karchevsky. The DNJ Complaint included seven (7) Counts, every one of which had its underpinnings in LD's claim that Karchevsky invented, and LD owned the D640 Patent.

55.    In particular, the DNJ Complaint claimed that RIFE is a competitor to LD and "knowingly copied" LD's laser rotary attachment device and then

patented it at the United States Patent and Trademark Office ("USPTO") as his own invention. DNJ Complaint §3  (emphasis added).

56.    The DNJ Complaint further alleged that RIFE monitored LD online and thereafter stole LD's intellectual property rights and applied for the D640 Patent.

57.    On information and belief, after its filing of the DNJ Complaint, LD, itself or through a third party, purchased the domain name www.Rotoboss.com (the "RotoBoss Domain"), which includes JER's RotoBoss trademark. On information and belief, when a consumer searches for RotoBoss on the Internet or goes to the RotoBoss Domain, rather than being directed to information concerning JER's Rotoboss rotary laser engraving device, he or she is instead directed to a website (the "Unicourt Website") featuring the DNJ Complaint, and highlighting the serious allegations that RIFE knowingly stole LD's rotary laser engraving device and applied for patent protection.

58.    Subsequent to filing the DNJ Complaint in 2023, LD has since disavowed its claims that RIFE knowingly copied and stole LD's rotary laser engraving device and applied for patent protection at the USPTO.

59.    On information and belief, based on what transpired in the New Jersey Court, LD knew that its claim of ownership in the D640 Patent in the DNJ Complaint failed as a matter of law. More particularly, to make out a claim that he is a joint inventor, LD had to plead "collaboration or concerted effort" occurred between Karchevsky and RIFE.

60.    The DNJ Complaint did not contain a single allegation that Karchevsky collaborated with or that there was a concerted effort between RIFE and Karchevsky to conceive or reduce to practice the claimed invention of the D640 Patent. Moreover, on information and belief, LD knew that a claim of collaboration between RIFE and Karchevsky could never be squared with its earlier claims that RIFE is a thief and stole LD's laser engraving device.

61.    Given the fundamental flaws in the DNJ Complaint, on December 6, 2023, RIFE submitted a letter to Judge Robert Kirsch in the New Jersey District Court requesting a pre-motion conference and asking that the DNJ Complaint be dismissed on numerous grounds, including Rule 12(b)(6), since there was not—and could never be—a showing of collaboration between RIFE and Karchevsky under this set of facts. LD responded with a letter of its own, claiming that it had met its burden of showing collaboration.

62.    A status conference was thereafter set for February 16, 2024, with Magistrate Judge Tonianne J. Bongiovanni. During that conference, RIFE was directed to email a brief in support of his proposed motion to dismiss to both LD and the Court, which RIFE did.

63.    LD never filed a response to the motion to dismiss. Instead, on March 8, 2024, LD sought leave to amend its Complaint. On information and belief, LD knew as early as March 8, 2024, that its DNJ Complaint was fatally flawed.

64.    Rather than follow through with filing an amended Complaint, LD asked that the DNJ Complaint be transferred to the Middle District of Florida.

RIFE objected, emphasizing that it made little sense to transfer the DNJ Complaint to this Court knowing that the Complaint was defective, had to be amended in view of Rule 12(b)(6), and could not be amended to allege collaboration.

65.    On July 8, 2024, the Magistrate Judge held a teleconference and asked RIFE to voluntarily agree to the transfer of LD's DNJ Complaint. RIFE agreed  so as to avoid the additional expenses associated with proceeding in the DNJ Court based on LD's defective pleading.

66.    The Complaint was transferred to the U.S. District Court for the Middle District of Florida (the "Florida District Court") (Case Number 3:2024-cv-00798-MMH-LLL) (the "MDFL Complaint").  The Florida District Court thereafter ordered that LD amend the DNJ Complaint to correct its shotgun pleading approach.

67.    After two failed attempts, LD filed an amended Complaint wherein LD fundamentally rewrote the DNJ Complaint. In the MDFL Complaint, the claims seeking correction of inventorship and declaratory judgments of ownership, invalidity, and unenforceability of the D640 Patent have been deleted. In stark contrast to the pleaded claims in the DNJ Complaint, LD's new claims are predicated on allegations that there are ***"numerous substantial differences"*** between LD's PiBurn products, and the design claimed in the D640 Patent so that the D640 Patent is not infringed by LD.

68.    The claim that RIFE monitored LD online and thereafter stole LD's intellectual property rights and applied for the D640 Patent have been withdrawn,

as has the claim that Rife "knowingly copied" LD's laser rotary engraving device. LD has removed these claims of copying and theft in its amended Complaint. LD no longer claims that RIFE copied and stole LD's PiBurn products and used them as the basis to file his D640 Patent. Contrary to the claims in the DNJ Complaint, LD now alleges that its PiBurn products are highly dissimilar to the D640 Patent.

69.    Notwithstanding the fact that LD has retracted these serious claims that RIFE knowingly copied and stole its rotary laser engraving device in the MDFL Complaint, LD continues to use the RotoBoss Domain to misdirect potential customers of JER and RIFE to the Unicourt.com Website, which publishes the DNJ Complaint, including its now discredited and frivolous allegations that RIFE stole LD's rotary laser engraving device and patented it for himself. On information and belief, a customer being misdirected to the RotoBoss Domain would mistakenly believe that RIFE stole LD's rotary laser engraving device based on a reading of the DNJ Complaint featured on the Unicourt.com Website. The claims would obviously dissuade any customer from purchasing rotary laser engraving devices from JER.

70.    On information and belief, LD has provided copies of the DNJ Complaint to potential customers and distributors of JER or otherwise directed them to the RotoBoss Domain, despite knowing full well that those allegations have been retracted and that the DNJ Complaint is no longer viable.

## THE JER PATENTS

71.    Independent **claim 1** of the '572 Patent is directed to a rotary laser engraving device for retaining and rotating objects to be engraved, the rotary laser engraving device comprising: a frame comprising a central bar arranged in a longitudinal direction, a first support post extending vertically upward relative to the central bar, a second support post extending vertically upward relative to the central bar, and at least one support extension coupled to the central bar; wherein the at least one support extension has a centroidal axis paralleled to the central bar; wherein the central bar is offset horizontally from the centroidal axis; a first support assembly carried by the first support post for supporting a first end of the object to be engraved; wherein the first support assembly includes a first set of rollers engaged with a motor assembly to rotate the object to be engraved; wherein the first support assembly includes a gripping mechanism configured to abut against an inner surface of the object to be engraved; a second support assembly carried by the second support post and including a second set of rollers for supporting a second end of the object to be engraved; wherein the first set of rollers and the second set of rollers are offset diagonally from the central bar of the frame; a longitudinal adjustment mechanism carried by the frame and configured to move at least one of the first support post and the second support post in the longitudinal direction along the central bar to vary a longitudinal separation between the first set of rollers and the second set of rollers; and at least one vertical adjustment mechanism carried by the frame and configured to move at least one of the first

support assembly and second support assembly vertically along the first support post and second support post, respectively, to vary a vertical separation between the first set of rollers and the second set of rollers.

72.    Independent **claim 13** of the '572 Patent is directed to a rotary laser engraving device for retaining and rotating objects to be engraved, the rotary laser engraving device comprising: a frame comprising a central bar arranged in a longitudinal direction, a first support post extending vertically upward relative to the central bar, a second support post extending vertically upward relative to the central bar, and at least one support extension coupled to the central bar; wherein the at least one support extension has a centroidal axis paralleled to the central bar and the central bar is offset horizontally from the centroidal axis; and at least one of the first support post and the second support post includes a support assembly for supporting a first end of the object to be engraved; wherein the support assembly includes a first set of rollers engaged with a motor assembly to rotate the object to be engraved; wherein the support assembly includes a gripping mechanism configured to abut against an inner surface of the object to be engraved; and wherein the first set of rollers is offset diagonally from the central bar of the frame such that a central axis of the object is offset both a horizontal distance and a vertical distance from the central bar.

73.    Independent **claim 16** of the '572 Patent is directed to a rotary laser engraving device for retaining and rotating objects to be engraved, the rotary laser engraving device comprising: a frame comprising a central bar arranged in a

longitudinal direction, a first support post extending vertically upward relative to the central bar, a second support post extending vertically upward relative to the central bar, and at least one support extension coupled to the central bar; wherein the at least one support extension has a centroidal axis paralleled to the central bar; wherein the central bar is offset horizontally from the centroidal axis; a first support assembly carried by the first support post for supporting a first end of the object to be engraved; wherein the first support assembly includes a first set of rollers engaged with a motor assembly to rotate the object to be engraved; wherein the first support assembly includes a gripping mechanism configured to abut against an inner surface of the object to be engraved; a second support assembly carried by the second support post and including a second set of rollers for supporting a second end of the object to be engraved; wherein the second set of rollers includes an inner wheel mounted on an inner axle and an outer wheel mounted on an outer axle; wherein the inner axle and the outer axle are parallel to one another and parallel to a central axis of the object to be engraved; wherein the first set of rollers and the second set of rollers are offset diagonally from the central bar of the frame such that the central axis of the object is offset a distance from the central bar; a longitudinal adjustment mechanism carried by the frame and configured to move at least one of the first support post and the second support post in the longitudinal direction along the central bar to vary a longitudinal separation between the first set of rollers and the second set of rollers; and at least one vertical adjustment mechanism carried by the frame and configured to move

at least one of the first support assembly and second support assembly vertically along the first support post and second support post, respectively, to vary a vertical separation between the first set of rollers and the second set of rollers.

74.    As explained at column 1, lines 45-55 of the patent specification of the '572 Patent, the apparatus of the '572 Patent is beneficial because there is an established need for a rotary laser engraving device that is easily adjustable to accommodate various lengths of objects to be engraved. There is a further need for a laser engraving device that is easily adjustable to accommodate objects having various shapes and/or varying diameters. There is still further a need for a rotary laser engraving device that can accommodate all of these adjustments easily and with a minimal amount of effort on the part of the user.

75.    As explained in column 7, lines 14-29 of the patent specification of the '572 Patent, the first support assembly 112 is movable relative to the frame assembly 110 in a vertical direction z. The second support assembly 114 is both movable relative to the frame assembly 110 in the vertical direction z and in a horizontal, longitudinal direction y perpendicular to the vertical direction z, to accommodate varying lengths of objects to be engraved. The first support assembly 112 and the second support assembly 114 are off-centered from the frame assembly 110.

76.    As explained in column 7, lines 55-57 of the '572 Patent specification, the first support post 128 extends in the vertical direction z.

77.    As explained in column 7, lines 60-62 of the '572 Patent specification, the second support post 130 also extends in the vertical direction z.

78.    As explained in column 9, lines 42-45 of the '572 Patent specification, to move the first support assembly 112 on support post 128, the rotary laser engraving device 100 includes a first vertical adjustment mechanism 190.

79.    As explained in column 10, lines 28-31 of the '572 Patent specification, to move the second support assembly 114 along support post 130, the rotary laser engraving device 100 includes a second vertical adjustment mechanism 240.

80.    Independent **claim 1** of the '830 Patent is directed to a rotary laser engraving device for retaining and rotating objects to be engraved, the rotary laser engraving device comprising: a frame; a first support assembly mounted on the frame and including a first set of rollers for supporting a first end of an object to be engraved; a second support assembly mounted on the frame and including a second set of rollers for supporting a second end of the object to be engraved; a longitudinal adjustment mechanism carried by the frame and configured to move at least one of the first support assembly and second support assembly in a longitudinal direction along the frame to vary a longitudinal separation between the first set of rollers and the second set of rollers; at least one vertical adjustment mechanism carried by the frame and configured to move at least one of the first support assembly and second support assembly vertically along the frame to vary a vertical separation between the first set of rollers and the second set of rollers; wherein the at least one vertical adjustment mechanism comprises a vertical

adjustment mechanism carried by the frame and configured to move the first support assembly along the first support post; and a motor assembly engageable with the first set of rollers to rotate the first set of rollers to rotate the object to be engraved.

81.     Independent **claim 18** of the '830 Patent is directed to a rotary laser engraving device for retaining and rotating objects to be engraved, the rotary laser engraving device comprising: a frame, comprising a central bar arranged in a longitudinal direction, a first support post extending vertically upward relative to the central bar, and a second support post extending vertically upward relative to the central bar; a first support assembly carried by the first support post and including a first set of rollers for supporting a first end of an object to be engraved; a second support assembly carried by the second support post and including a second set of rollers for supporting a second end of the object to be engraved; a longitudinal adjustment mechanism carried by the frame and configured to move at least one of the first support post and the second support post in the longitudinal direction along the central bar to vary a longitudinal separation between the first set of rollers and the second set of rollers; at least one vertical adjustment mechanism carried by the frame and configured to move at least one of the first support assembly and second support assembly vertically along the first support post and second support post, respectively, to vary a vertical separation between the first set of rollers and the second set of rollers; wherein the at least one vertical adjustment mechanism comprises a vertical adjustment mechanism carried by the

frame and configured to move the first support assembly along the first support post; and a motor assembly engageable with the first set of rollers to rotate the first set of rollers to rotate the object to be engraved.

82.    Independent **claim 19** of the '830 Patent is directed to a rotary laser engraving device for retaining and rotating objects to be engraved, the rotary laser engraving device comprising: a frame, comprising a central bar arranged in a longitudinal direction, a first support post extending vertically upward and non-longitudinally movable relative to the central bar, and a second support post extending vertically upward and longitudinally movable relative to the central bar; a first support assembly carried by the first support post and including a first set of rollers for supporting a first end of an object to be engraved; a second support assembly carried by the second support post and including a second set of rollers for supporting a second end of the object to be engraved; a longitudinal adjustment mechanism carried by the frame and configured to move the second support post in the longitudinal direction along the central bar to vary a longitudinal separation between the first set of rollers and the second set of rollers; at least one vertical adjustment mechanism carried by the frame and configured to move at least one of the first support assembly and second support assembly vertically along the first support post and second support post, respectively, to vary a vertical separation between the first set of rollers and the second set of rollers; wherein the at least one vertical adjustment mechanism comprises a vertical adjustment mechanism carried by the frame and configured to move the first support assembly along the

first support post; and a motor assembly engageable with the first set of rollers to rotate the first set of rollers to rotate the object to be engraved.

83.    As explained in column 5, lines 31-40 of the '830 Patent specification, the first support assembly 112 includes a pair of driven rollers 116 for supporting and rotating a first end of an object to be engraved, while the second support assembly 114 includes a pair of free rollers 118 to allow the object to be engraved to rotate freely relative to the second support assembly. A motor assembly 120 is provided to rotate the pair of driven rollers 116 of the first support subassembly 112 and thus rotate the object to be engraved as it is being engraved by an associated laser mechanism.

<b>LD'S INFRINGING DEVICES</b>

84.    On information and belief, on or about March 2021, LD manufactured and sold a rotary device for laser engravement of cylindrical objects under the trademark PiBurn 3.0™, which is shown in the below photograph on the right.

 

85.    On information and belief, on or about March or April of 2023, LD manufactured and sold a rotary device for laser engravement of cylindrical objects under the trademark PiBurn V4™, which is shown in the below photograph.



86.    On information and belief, on or about March or April of 2023, LD manufactured and sold a rotary device for laser engravement of cylindrical objects under the trademark PiBurn Grip™, which is shown in the below photograph.



87.    On information and belief, on or about June 2024, LD manufactured and sold a rotary device for laser engravement of cylindrical objects under the trademark PiBurn V™, which is shown in the following photograph.



88.     On information and belief, on or about June 2024, LD manufactured and sold a rotary device for laser engravement of cylindrical objects under the trademark PiBurn Grip 2™, which is shown in the below photograph.





89.     The PiBurn 3.0, V4, V5, Grip and Grip 2 devices are herein collectively referred to as "the Infringing Devices."

**JER's Notifies LD's Affiliates of its Patents**

90.    On January 10, 2025 and January 11, 2025, JER sent a private letter ('the JER Letter") to some of LD's affiliates, including the Co-Defendants in this Complaint. In the letter, JER attached a copy of each of the '572 and '830 Patents and asked the Co-Defendants to review the claims of the '572 and '830 Patents in comparison to the Infringing Devices.

91.    The JER Letter, which included the subject line "Investigation Regarding Promotion of PiBurn Rotary Laser Engraving Device...," stated that JER Custom Designs, Inc. is the owner of the '572 and '830 Patents and advised that those "promoting and/or advertising a competitive rotary laser engraving device(s) under the brand name PiBurn, including at least the PiBurn V product..." should "review the claims of the ['572 and '830 Patents] and compare those claims to the PiBurn Products." The JER Letter provided if the receiver of the letter was not promoting or advertising for LD then to respond within fourteen (14) days from the date of the letter. A copy of an example JER Letter is attached herewith as **Exhibit D**.

92.    On information and belief, ALTSHULLER, on behalf of LD, immediately went online live on January 10, 2025, advising the public that the JER Letter is a "nothingburger" meant to "threaten and intimidate" and falsely represented that "[JER's] patent hasn't been granted yet," that LD actually holds the patent, and that JER is "attacking" the maker community.

93.     The very next day, ALTSHULLER, on behalf of LD, laughed off the JER Letter, advising "[t]he letter makes NO DEMAND" and is "nothing but an invitation to "read a patent filing;" that there is "NO MENTION of infringement," and contrary to statements made the prior day, acknowledged  that JER does have a patent, and that JER obtained its patent despite LD's prior products and publicly disclosed prototype. In the same public post, ALTSHULLER, also informed LD's customers and affiliates that they are "NOT AT RISK," they are "100% SAFE." The post is shown below:

 **PiBurn Labs by LensDigital**
Stan Altshuller · 2m · 🌐



OK.... Information time. I just had long discussions with our awesome legal team who are working on the weekend for our affiliates.

First thing first. I want to reassure our affiliates, customers, and friends that these legal letter pose absolutely ZERO risk to you and were nothing more than a desperate and dirty attempt to threaten you. Here is what the lawyers told me in brief:

We will get each affiliated a letter detailing why any allegations of infringement are baseless. The fact that this letter doesn't actually allege infringement anywhere is telling:

1. The letter makes NO DEMAND. There is no cease and desist, no complaint, there is nothing but an "invitation" to read a patent filing and "please get back to them". This is extremely weak in the legal world.

2. There is NO MENTION of infringement. Any legal letter worth its weight in salt has a clear outline of what the issue is. If there is no infringement, what is the issue? Hurt feelings do not count.

3. The Patent that was attached cites PiBurn from 2019!!!!! Guess what – it was Len's kickstarter. Everyone who got the letter go ahead and look at the right side of the refferences on the first and second page. By sending this letter to everyone rotoboss admitted that he looked at the PiBurn design FIRST and THEN tried to file a patent.

4. The examiner REJECTED the initial patent citing .... you guessed it, Len's PiBurn!!!

5. He got around the rejection by getting a patent on a small part of the rotary that we do not use.

Also they spelled manual wrong and that is just embarrassing in a legal letter trying to threaten people.

Our first priority right now is to reassure our makers. No, you are NOT AT RISK. You are 100% SAFE and we are going to take care of this.

Second I want to thank you from the bottom of my heart for the outpouring of suopport for the makers who got the letters and our company.

We love you guys!!!! And we got your back!

94.    Several days after, ALTSHULLER released, on behalf of LD, a public

letter , which claimed that JER's Patents contained dissimilarities to LD's Piburn

products. A copy of the public letter circulated by LD is attached as **<u>Exhibit E</u>**.

Contrary to the public letter, those "dissimilarities" were alleged to be present in

the PiBurn products in the DNJ Complaint.   Accordingly, on information and

belief, LD cannot have a good faith basis that none of its current and past PiBurn products are infringing the JER Patents on the stated ground in the public letter in view of the allegations asserted by LD in the DNJ Complaint admitting to the existence of these features in the PiBurn device.

95.    LD continues to sell the Infringing Devices notwithstanding its knowledge of the JER Patents. Likewise, on information and belief, LD's Co-Defendants continue to use the PiBurn devices in violation of the JER Patents and continue to spread disparaging and false representations concerning RIFE, JER, and the RotoBoss devices.

96.    For example, after receiving the JER Letter, MONTELLO responded online and stated, "I am going to Post this letter and I'm gonna continue to talk about a product that I love. I shall see you in court if you want. Wrong person to send these silly letters to."

97.    On information and belief, and in complete and utter disregard of the JER Patents, MONTELLO then engraved the JER Letter on to a cup, as shown in the below photo, and disseminated images of the engraved cup to various online communities:



98.     On information and belief, MONTELLO used one of the Infringing Devices to engrave  the cup and, in doing so, blatantly and willfully flouted his infringing acts for all of the Internet to witness firsthand.

99.     In a statement attached to the image of the engraved cup, MONTELLO falsely stated that the JER Letter "threatened" and "attacked" him and many others.  MONTELLO also stated that "I have not had the opportunity of having an altercation with [RIFE], but I think my time is coming."

100.    In still other instances, on information and belief, MONTELLO targeted companies that work with JER and left several of them bad reviews including false statements and demanded that they cease working with JER.

101.    On information and belief, after MONTELLO made the engraved cup by using one of the Infringing Devices, ALTSHULLER proceeded to promote the cup and to spread additional false statements on social media, like those in the below posting, to further the LD narrative that JER is attacking the maker community:



102.    On information and belief, the messaging in the latest posting from ALTSHULLER was intended to turn the community against JER by equating protecting intellectual property rights with "cowardly bullying tactics against people who have done no wrong."   In fact, JER only sent letters to individuals believed to be affiliates of LD.   On information and belief, all or nearly all individuals that received the JER Letter were affiliates of LD.

103.    On January 10, 2025, LOBO, through its owner, responded to the JER Letter acknowledging that she is an employee of LD and incorrectly  stating that, "[JER's] patent is owned by Len Karchevsky of LD, not Jason Rife or RotoBoss. Do your research before threatening me and don't even consider contacting me again. There's your 'response within 14 days'. Goodbye"

104.    On or around January 2025, LOBO made a social media post where its owner tagged JER and stated: "This company is a joke and its owner is a coward. Go with the competition and gain a helpful community and not a little boy who threatens a lawsuit against anyone who buys another (much better) brand – **one that doesn't steal IP from companies to try and get ahead**.  Jason Rife I hope you are ashamed of yourself and this pathetic attack on the laser community." (emphasis added).

105.    On or around January 2025, LOBO made another social media post where its owner tagged JER and shown below:



106.    On January 10, 2025, FARO responded to the JER Letter and stated: "I hope you charged [RIFE] a decent amount to draft and send these emails. It's what he deserves." FARO went on to post a vast number of public statements on one or more social media platforms.  In her posts FARO continued the LD narrative that JER and RIFE attacked the maker/laser community.

107.    On information and belief, in at least one instance FARO propounded the lie that she had been threatened in order to promote the purchase of LD products as shown below:



## COUNT I
### Infringement of U.S. Patent No. 12,090,572
### (Against ACCUSED INFRINGERS)

108.   JER re-alleges and incorporates herein the allegations of paragraphs 1 through 107 above, as if fully set herein.

109.   On information and belief, the ACCUSED INFRINGERS  have known of the '572 Patent since at least as early as  January 10, 2025.

110.    On information and belief, LD was aware of and copied the JER design claimed in the '572 Patent and incorporated it into each of its Infringing Devices.

111.    On information and belief, the ACCUSED INFRINGERS , acting alone or under the direction and control of LD, infringe at least claims 1, 2, 3, 4, 6, 7, 13, 14, 15, 16, 17, 18, and 19 of the '572 Patent either literally and/or under the Doctrine of Equivalents by making, selling and/or using the PiBurn 3.0 Rotary Laser Engraving Device. *See* **Exhibit F**, which shows a claim chart of the PiBurn 3.0 device compared to the issued independent claims of the '572 Patent.

112.    On information and belief, the ACCUSED INFRINGERS , each acting alone or under the direction and control of LD, infringe at least claims 1, 2, 3, 4, 7, 13, 14, 15, 16, 17, 18, and 19 of the '572 Patent either literally and/or under the Doctrine of Equivalents by making, selling and/or using the PiBurn V4 Rotary Laser Engraving Device. *See* **Exhibit G**, which shows a claim chart of the PiBurn V4 device compared to the issued independent claims of the '572 Patent.

113.    On information and belief, the ACCUSED INFRINGERS, each acting alone or under the direction and control of LD, infringe at least claims 1, 2, 3, 4, 7, 13, 14, 15, 16, 17, 18, and 19 of the '572 Patent either literally and/or under the Doctrine of Equivalents by making, selling and/or using the PiBurn Grip Rotary Laser Engraving Device.  *See* **Exhibit H**, which shows a claim chart of the PiBurn Grip device compared to the issued independent claims of the '572 Patent.

114.    On information and belief, the ACCUSED INFRINGERS , each acting alone or under the direction and control of LD, infringe at least claims 1, 2, 3, 4, 7, 9, 10, 13, 14, 15, 16, 17, 18, 19 and 20 of the '572 Patent either literally and/or under the Doctrine of Equivalents by using the PiBurn V Rotary Laser Engraving Device. *See* **Exhibit I**, which shows a claim chart of the PiBurn V device compared to the issued independent claims of the '572 Patent.

115.    On information and belief, the DEFENDANTS, each acting alone or under the direction and control of LD, infringe at least claims 1, 2, 3, 4, 7, 9, 10, 13, 14, 15, 16, 17, 18, 19 and 20 of the '572 Patent either literally and/or under the Doctrine of Equivalents by using the PiBurn Grip 2 Rotary Laser Engraving Device. *See* **Exhibit J**, which shows a claim chart of the PiBurn Grip 2 device compared to the issued independent claims of the '572 Patent.

116.    On information and belief, LD possessed specific intent to directly infringe at least claims 1, 2, 3, 4, 6, 7, 13, 14, 15, 16, 17, 18 and 19 of the '572 Patent either literally and/or under the Doctrine of Equivalents by making and selling the PiBurn 3.0 device to customers, including the other ACCUSED INFRINGERS, that use the PiBurn 3.0 device.

117.    On information and belief, LD possessed specific intent to directly infringe at least claims 1, 2, 3, 4, 7, 13, 14, 15, 16, 17, 18 and 19 of the '572 Patent either literally and/or under the Doctrine of Equivalents by making and selling the PiBurn V4 device to customers including the other ACCUSED INFRINGERS , that use the PiBurn V4 device.

118.    On information and belief, LD possessed specific intent to directly infringe at least claims 1, 2, 3, 4, 7, 13, 14, 15, 16, 17, 18 and 19 of the '572 Patent either literally and/or under the Doctrine of Equivalents by making and selling the PiBurn Grip device to customers including the other ACCUSED INFRINGERS, that use the PiBurn Grip device.

119.    On information and belief, LD possessed specific intent to directly infringe at least claims 1, 2, 3, 4, 7, 9, 10, 13, 14, 15, 16, 17, 18, 19 and 20 of the '572 patent either literally and/or under the Doctrine of Equivalents by making and selling the PiBurn V device to customers including the other ACCUSED INFRINGERS, that use the PiBurn V device.

120.    On information and belief, LD possessed specific intent to directly infringe at least claims 1, 2, 3, 4, 7, 9, 10, 13, 14, 15, 16, 17, 18, 19 and 20 of the '572 Patent either literally and/or under the Doctrine of Equivalents by making and selling the PiBurn Grip 2 device to customers including  the other ACCUSED INFRINGERS  that use the PiBurn Grip 2 device.

121.    On information and belief, the ACCUSED INFRINGERS' infringement has been knowing and willful.

122.    JER is without an adequate remedy at law and will be irreparably harmed if the Court does not enter an order enjoining the ACCUSED INFRINGERS from infringing the '572 Patent.

**COUNT II**
**Infringement of U.S. Patent No. 12,186,830**
**(Against ACCUSED INFRINGERS)**

123.    JER re-alleges and incorporates herein the allegations of paragraphs 1 through 107 above, as if fully set herein.

124.    On information and belief, since as early as 2021,the ACCUSED INFRINGERS  were aware of JER's patent application that eventually issued as the '830 Patent.

125.    On information and belief, the ACCUSED INFRINGERS have known of the '830 Patent since at least as early as about January 10, 2025.

126.    On information and belief, LD was aware of and copied the JER design claimed in the '830 Patent and incorporated it into each of its Infringing Devices.

127.    On information and belief, the ACCUSED INFRINGERS, acting alone or under the direction and control of LD, infringe at least claims 1, 2, 5, 14, 15, 18 and 19 of the '830 Patent either literally and/or under the Doctrine of Equivalents by making, using and selling the PiBurn Grip 2 Rotary Laser Engraving Device. *See* **Exhibit K**, which shows a claim chart of the PiBurn Grip 2 device compared to the issued independent claims of the '830 Patent.

128.    On information and belief, LD possessed specific intent to directly infringe at least claims 1, 2, 5, 14, 15, 18 and 19 of the '830 Patent either literally and/or under the Doctrine of Equivalents by making and selling the PiBurn Grip 2

device to customers including the Co-Defendants, that used the PiBurn Grip 2 device.

129.    On information and belief, the ACCUSED INFRINGERS' infringement has been knowing and willful.

130.    JER is without an adequate remedy at law and will be irreparably harmed if the Court does not enter an order enjoining the ACCUSED INFRINGERS from infringing the '830 Patent.

## COUNT III
## Unfair Competition – False Designation of Origin
## Under 15 U.S.C. § 1125(a)(1)(A)
## (Against LD and ALTSHULLER)

131.    JER and RIFE re-allege and incorporate herein the allegations of paragraphs 1 through 107 above, as if fully set herein.

132.    This claim arises under 15 U.S.C. § 1125(a)(1)(A) for false designation of origin, description, and representation of goods and services as to their nature and origin.

133.    After the adoption and use by JER of the RotoBoss trademark, LD, aided and abetted by ALTSHULLER, adopted the mark and began using the RotoBoss Domain in commerce without the authorization of JER on and in connection with the sale and promotion of the Infringing Devices. In particular, on information and belief, LD would direct consumers to the RotoBoss Domain to mislead them as to the nature and origin of the RotoBoss Devices as deriving from or being affiliated with LD's devices.

134.    Defendant's use of the RotoBoss trademark in the RotoBoss Domain is likely to cause confusion, mistake, and deception among consumers as to the nature and origin of JER's RotoBoss devices as deriving from LD instead of JER and to unfairly compete with JER.

135.    LD is not authorized or licensed to use the RotoBoss trademark.  On information and belief, despite having firsthand knowledge of JER's ownership and use of the RotoBoss trademark, LD has used and continues to use the confusingly similar RotoBoss and the RotoBoss Domain in a manner likely to cause confusion or mistake as to the origin of the products and affiliation with LD. Because of LD's wrongful use of the RotoBoss trademark, LD is deceptively leading consumers to believe that JER's products were derived from or are associated with LD, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

136.    LD and ALTSHULLER are intentionally and willfully deceiving the public while depriving JER of the sales and profits it would otherwise obtain and has irreparably damaged the valuable reputation and goodwill of JER and RIFE and the RotoBoss trademark.

137.    On information and belief, ALTSHULLER directed, committed, authorized or otherwise caused the foregoing acts in conjunction with LD.

138.    Consequently, JER and RIFE have no adequate remedy at law, and the balance of the equities favors JER and RIFE.

**COUNT IV**
**Unfair Competition – False Advertising**
**Under 15 U.S.C. § 1125(a)(1)(B)**
**(Against all DEFENDANTS)**

139.   JER and RIFE  re-allege and incorporate herein the allegations of paragraphs 1 through 107 above, as if fully set herein.

140.   DEFENDANTS, in connection with the marketing and sale of the PiBurn laser engraving device, have made and continues to make false and/or misleading representations of fact in communications used in interstate commerce.

141.   DEFENDANTS' representations described above are false and misleading, deceive, or are likely to deceive, the intended audience of customers and prospective customers, and intended to influence such customers by serving as a material aspect of each respective customer's decisions on whether to purchase Rotoboss products from JER.

142.   DEFENDANTS' acts of false communications were intended to cause, and did in fact cause, deception to mislead customers of JER to believe JER stole design ideas for laser engraving devices from LD and dissuaded potential customers from conducting business with JER.  In at least one instance, ALTSHULLER and LD made disparaging comments about JER and RIFE on social media, including by calling RIFE a thief, and causing customers of JER to read these comments.  In other instances, LD has published the RotoBoss Domain to mislead consumers to wrongly believe that RIFE and JER stole LD's rotary

engraving laser devices. Those false statements were later retracted by LD, but the RotoBoss Domain is still up online and continues to publish the NJ Complaint, as if these are still viable claims.

143.   On information and belief, all of the DEFENDANTS, in reliance on representations by ATSHALLER and LD, further disseminate and publish these false statements, including that RIFE is a thief, which disparage RIFE, JER, and the RotoBoss devices.

144.   DEFENDANTS, by making such false and misleading statements, have caused and are likely to continue causing JER competitive or commercial injury, including but not limited to, loss of goodwill and loss of sales.

145.   Consequently, JER and RIFE have no adequate remedy at law, and the balance of the equities favors JER and RIFE.

**COUNT V**
**<u>Trade Libel</u>**
**(Against LD and ALTSHULLER)**

146.    JER and RIFE  re-allege and incorporate herein the allegations of paragraphs 1 through 107 above, as if fully set herein.

147.   On numerous occasions, LD knowingly, and without justification, made materially false representations in writing to third parties including, AEON and Laguna Tools, Inc, in which LD falsely stated that JER copied LD's designs and/or is infringing LD's patents.  LD knew and had reason to know that such statements would induce others not to deal with JER.

148.   LD's statements were false in that, among other things, JER did not copy LD's designs, as JER independently conceived its laser engraving device. On information and belief, LD and ALTSHULLER knew those statements were false and retracted them in the MDFL Complaint.

149.   LD's materially false representations were calculated to impugn JER's business reputation and that of its products, and to dissuade others from doing business with JER, and were calculated to otherwise interfere with JER's business relationships.

150.   LD knowingly, intentionally, in bad faith, and/or in reckless disregard for the truth, made (and/or caused to be made) such false communications regarding JER, and was motivated solely by unrestrained self-interest and/or malice without legal or social justification.

151.   LD's willful and intentional misconduct, without JER's knowledge or consent, irreparably injured and caused damage to JER in its business reputation.

152.   As a result of LD's aforesaid acts and conduct, JER has been irreparably injured in its business, and in its good name, and character. JER's standing in the laser engraving industry has also been significantly impaired.

153.   The false statements affected JER in its trade, business, and profession. Among other things, prior to LD's false statements, JER had reasonable expectations and was anticipating the generation of a significant number of sales from both AEON and Laguna Tools, Inc.

154.    As discussed in more detail above, at the time LD made the false statements, LD knew and/or should have known that such statements to JER's retailers and potential customers were false or were made with reckless disregard for the truth in that LD knew that it did not have any rights to the JER Rotoboss devices and LD knew that the JER Rotoboss devices were improvements over LD's existing rotary devices.

155.    LD made such statements with the intention to harm JER.

156.    JER places immense value on its relationships with all of its customer contacts.

157.    In view of comments made by LD on social media, Haotian told JER that it was "tired" of LD's comments to the point that Haotian no longer wished to promote JER.

158.    On information and belief, JER believes LD knew its statements would cause, and fully intended for his statements to cause, Haotian to suspend its relationship with JER as a direct and proximate result of LD's statements and actions.

159.    On information and belief, DEFENDANTS' actions were the sole cause, or contributed substantially to the cause, of JER's relationship with Haotian being harmed.

160.    In view of comments made by LD on social media, AEON discontinued its long-standing business relationship with JER in or around June of 2023, which resulted in lost annual sales of about $600,000.00.

161.    On information and belief, JER believes LD knew its statements would cause, and fully intended for his statements to cause, AEON to suspend its relationship with JER as a direct and proximate result of LD's statements and actions.

162.    In view of comments made by LD on social media, Laguna Tools, Inc. discontinued its business relationship with JER in or around June 2023, which resulted in lost annual sales of about $600,000.00.

163.    On information and belief, JER believes LD knew its statements would cause, and fully intended for his statements to cause, Laguna Tools, Inc. to suspend its relationship with JER as a direct and proximate result of LD's statements and actions.

164.    LD made such statements with the intention to direct to itself sales for its PiBurn laser engraving devices.

165.    LD's statements were not mere statements of opinion.

166.    As a result of LD's aforesaid acts, conduct, and materially false representations and statements, JER has been irreparably injured in its business, and in its good name, and character. JER's standing in the laser engraving industry has also been significantly impaired.

167.    On information and belief, ALTSHULLER directed, committed, authorized or otherwise caused the foregoing acts in conjunction with LD.

**COUNT VI**
**Violation of FDUTPA under § 501.201 et. seq., Fla. Stat.**
**(Against all DEFENDANTS)**

168.    JER re-alleges and incorporates herein the allegations of paragraphs 1 through 107 above, as if fully set herein.

169.    DEFENDANTS, in connection with the marketing and/or sale of the PiBurn laser engraving device, have made and continue to make false and/or misleading representations of fact in communications used in interstate commerce.

170.    DEFENDANTS' representations described above are false and misleading, deceive, or are likely to deceive, the intended audience of customers and prospective customers, and intended to influence such customers by serving as a material aspect of each respective customer's decisions on whether to purchase products from JER.

171.    DEFENDANTS' acts of false communications were intended to cause, and did in fact cause, deception to mislead customers of JER to believe JER stole design ideas for laser engraving devices from LD and dissuaded potential customers from conducting business with JER. In at least one instance, ALTSHULLER and LD made disparaging comments about JER on social media, including by calling him a thief, causing customers of JER to read these comments. In other instances, LD has published the RotoBoss Domain to mislead consumers to wrongly believe that RIFE and JER stole LD's rotary engraving laser devices.

172.    DEFENDANTS, by making such false and misleading statements, actually caused substantial injury to JER and are likely to continue causing JER substantial competitive or commercial injury, including but not limited to, loss of goodwill and loss of sales.

173.    The substantial injury to JER legally caused by DEFENDANTS is not outweighed by any benefit to consumers that the unfair practice produces.

174.    JER could not have reasonably avoided the substantial injury caused by DEFENDANTS.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs JASON EARL RIFE and JER Custom Designs, Inc. respectfully request the following relief:

A. Judgment against the ACCUSED INFRINGERS , finding that the ACCUSED INFRINGERS have directly infringed on US Patent No. 12,186,830.

B. Judgment against the ACCUSED INFRINGERS , finding that the ACCUSED INFRINGERS have directly infringed on US Patent No. 12,090,572.

C. A permanent injunction enjoining DEFENDANTS and all third-parties, their employees, agents, officers, directors, attorneys, representatives, successors, affiliates, subsidiaries, and assigns and all those in concert or participation with any of them from:

   i.  Using or otherwise infringing upon JER's Patents;

    ii.  Using any false description or representation or any other thing calculated, or likely, to cause consumer confusion, deception, or mistake in the marketplace with regard to JER, RIFE, or JER's products, including its RotoBoss Devices; and

    iii.  Making, or causing to be made, false statements to third-parties with regard to JER, RIFE, or JER's products, including its RotoBoss devices.

D.  Judgment against DEFENDANTS, directing DEFENDANTS to remove any and all public statements which include any false statements about RIFE or JER or its employees, agents, officers, directors, attorneys, representatives, successors, affiliates, subsidiaries, or assigns;

E.  Judgment directing LD to assign the RotoBoss Domain to JER;

F.  Judgment against DEFENDANTS, directing DEFENDANTS to make corrective public statements in a form, manner, and frequency that is acceptable to RIFE, JER and the Court;

G.  Judgment against DEFENDANTS, directing DEFENDANTS to file with the Court and serve upon counsel for RIFE and JER within thirty (30) days after the entry of such order or judgment, a report in writing and under oath setting forth in detail the manner and form in which it has complied with this Court's orders;

H.  Judgment against the ACCUSED INFRINGERS , awarding JER and RIFE all profits of the ACCUSED INFRINGERS  resulting from their infringement of the JER Patents, in an amount to be proven at trial;

I.  Judgment against the ACCUSED INFRINGERS finding that the ACCUSED INFRINGERS' infringement of the JER Patents has been willful and awarding to JER and RIFE treble profits of the ACCUSED INFRINGERS resulting from their infringement of the JER Patents, in an amount to be proven at trial.

J.  Judgment against DEFENDANTS, awarding JER and Rife, recovery of its damages incurred as a result of the use of the RotoBoss Domain and the publication and dissemination of false and misleading statements disparaging JER, RIFE, and the RotoBoss devices, including without limitation the revenue and profits received by DEFENDANTS or the damages incurred by JER and RIFE, said amount to be trebled;

K.  Judgment against DEFENDANTS, awarding JER and RIFE, damages for tortious trade libel, in an amount to be proven at trial;

L.  Judgment against DEFENDANTS awarding prejudgment and post judgment interest;

M.  Judgment against DEFENDANTS finding this to be an exceptional case under 35 U.S.C. § 285 and/or 15 U.S.C. § 1117  and awarding JER

and RIFE costs and expenses, including, without limitation, their attorneys' fees and costs incurred herein;

N. Judgment against DEFENDANTS awarding JER and RIFE their costs in this action; and

O. All other relief, in law or equity, to which RIFE and JER may be entitled, or which the Court deems just and proper.

## REQUEST FOR TRIAL BY JURY

Plaintiffs JER CUSTOM DESIGNS, INC. and JASON E. RIFE requests a trial by jury on all issues so triable.

Respectfully submitted,

LIPPES MATHIAS, LLP

  */s/Mitchell R. Ghaneie*
Mitchell R. Ghaneie
Florida Bar No.:115965
10151 Deerwood Park Blvd.
Bldg. 300, Suite 300
Jacksonville, FL 32256
Phone: (904) 660-0020
*mghaneie@lippes.com*
*pgooden@lippes.com*